UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    'O'

| Case No. | 2:19-cv-10478-CAS(GJSx) | Date | March 23, 2020 |
|---|---|---|---|
| Title | STEVEN DRAEGER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) - DEFENDANT'S MOTION TO DISMISS (Dkt. [ 16 ], filed January 15, 2020)

## I.    INTRODUCTION AND BACKGROUND

Plaintiffs Steven Draeger and Dara Draeger ("plaintiffs") filed this action against defendant Transamerica Life Insurance Company ("Transamerica") in the Superior Court of the State of California for the County of Los Angeles on July 19, 2019. Dkt. 1. Plaintiffs subsequently filed a first amended complaint on November 12, 2019. Dkt. 1-1, Exhibit J ("FAC"). On December 11, 2019, Transamerica removed this action to the United States District Court for the Central District of California. Dkt. 1.

Plaintiffs allege that on January 23, 2003, Transamerica's predecessor issued a universal life insurance policy ("the Policy"), with a face amount of $1,500,000.00, on behalf of insured Clarice M. Lacey ("Lacey"). FAC ¶ 6. In February 2006, plaintiffs "purchased the Policy from its then-owner for approximately $430,000.00." Id. ¶ 7. According to plaintiffs, "Transamerica changed the registered Policy ownership to [plaintiffs'] names in [April 2006] and [Transamerica] changed the beneficiary designation at that time as well." Id. Plaintiffs further contend that at the time they acquired the Policy, plaintiffs "received in-force Policy illustrations showing the expected premium required under the contract for the life expectancy of the insured, and relied on those illustrations in purchasing the Policy." Id. Despite this representation at the time plaintiffs acquired the policy, Transamerica subsequently provided in-force illustrations projecting that plaintiffs would have to pay increased annual premiums to keep the Policy in effect. Id. ¶¶ 7, 12.

Plaintiffs contend that on July, 2016, "Transamerica mailed a notice of monthly deduction rate increase for the [P]olicy . . . stating, 'starting on your next policy anniversary date, your monthly deduction rates will increase by approximately 100%. This rate increase is in addition to the customary increases that are associated with age.'" FAC ¶ 11.

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:19-cv-10478-CAS(GJSx) | Date | March 23, 2020 |
| Title | STEVEN DRAEGER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

According to plaintiffs, their "total deduction rate actually increased by 118%." FAC ¶ 11. Plaintiffs assert that Transamerica may not: (1) "[s]et or increase the Monthly Deduction Rate in whatever amount or by whatever method it chooses"; (2) "[s]et or increase the Monthly Deduction Rate to recoup past losses on the Policy or other policies due to the failure of credited interest, policy lapse rates or other assumptions Transamerica made when originally pricing the Policy"; (3) "[s]et or increase the Monthly Deduction Rate to recoup past losses on the Policy or on other policies"; and (4) "[s]et or increase the Monthly Deduction Rate to negate or offset Transamerica's obligation to pay credited interest on the Policy or on their policies at minim guaranteed rates." Id. ¶ 18. Despite these limits, plaintiffs allege that Transamerica has impermissibly increased the Monthly Deduction Rate ("MDR") "to avoid its obligation to credit the guaranteed interest rates under the affected policies, to recoup past losses and to shed the affected policies by making the premiums to maintain them cost-prohibitive for the policyholders – thereby frustrating the policyholders' ability to receive their contractual benefits under the policies." Id. ¶ 37.

Plaintiffs further allege that Steven Draeger contacted Transamerica on at least two occasions regarding Transamerica's MDR increases. On September 6, 2011, in response to having received notice that a premium payment was due, "Steven Draeger spoke with a Transamerica representative named Raquel, who represented that to keep the policy in force to the insured's age 95, [plaintiffs] would have to pay $40,000 in annual premium[s] from September 27, 2011 to September 27, 2015, and thereafter, starting September 27, 2016, when the insured would be 92, $75,000 in annual premium for three years, and after that[,] [an] annual premium of $100,000 for three years[.]" FAC ¶ 47. Plaintiffs contend that they "also received a cover letter dated September 6, 2011 from [Transamerica's] Customer Service Department . . . which enclosed an in-force illustration dated September 6, 2011." Id. According to plaintiffs, the September 6, 2011 "represented that as of the illustration date, the Policy required a level annual premium of $52,310 to remain in force to the insured's age 95." Id.

Steven Draeger again contacted Transamerica on September 26, 2011, "sp[eaking] to a Transamerica representative named Amanda." FAC ¶ 48. Plaintiffs contend that "Transamerica then issued a cover letter dated September 26, 2011 from the Customer Service Department . . . along with an in-force illustration[.]" Id. In the September 26, 2011 in-force illustration, "Transamerica represented that as of the illustration date, the Policy required a level annual premium of $66,356 to remain in effect until the insured reached age 100." Id.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-10478-CAS(GJSx) | | Date | March 23, 2020 |
|----------|-------------------------|---|------|----------------|
| Title | STEVEN DRAEGER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | | |

Plaintiffs allege that "Transamerica's massive increase in the Monthly Deduction Rate causes [plaintiffs] to be unable to maintain sufficient premium payments to keep the accumulation account positive and keep the Policy in force." FAC ¶ 38. Accordingly, plaintiffs "borrowed money necessary to keep the Policy in force for about one year, but could not sustain that burden on a continuing basis. Rather allow the Policy to lapse, or surrender it for no compensation because it had no appreciable cash value left, [plaintiffs] chose to sell the Policy." Id. As such, "[o]n July 28, 2017, [plaintiffs] sold the policy for the best price available, which was $150,000, far below what the policy would have been absent Monthly Deduction Rate increases." Id.

Plaintiffs contend that Transamerica's conduct has caused plaintiffs to suffer damages including "the loss of money they invested in the Policy, the loss of the excess Monthly Deduction Rates they paid for a year, interest paid on borrowings to keep the Policy in force, loss of the anticipated $1,500,000 death benefit they would have received upon the death of the insured, other economic losses, and general damages for emotional stress caused by the loss of retirement funding on which [plaintiffs] were counting [on] for support, all in an amount well in excess of $1,000,000." FAC ¶ 39. Plaintiffs assert claims for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) intentional misrepresentation and concealment; (4) negligent misrepresentation; and (5) violation of California's Unfair Competition Law ("UCL"). See generally id.

Transamerica filed a motion to dismiss the FAC on January 15, 2020. Dkt. 16-1 ("Mot."). Plaintiffs filed an opposition on January 14, 2020 ("Opp."). Transamerica filed a reply on February 24, 2020. Dkt. 24 ("Reply").

The Court held a hearing on March 2, 2020. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-10478-CAS(GJSx) | Date | March 23, 2020 |
|----------|--------------------------|------|----------------|
| Title | STEVEN DRAEGER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

formulaic recitation of the elements of a cause of action will not do." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> (internal citations omitted).

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. <u>Pareto v. FDIC</u>, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009); <u>see</u> <u>Moss v. United States Secret Service</u>, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679.

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." <u>Schreiber Distrib. Co. v. Serv-Well Furniture Co.</u>, 806 F.2d 1393, 1401 (9th Cir. 1986); <u>see</u> <u>Lopez v. Smith</u>, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III.    DISCUSSION

### A.    Breach of Contract Claim

According to Transamerica, a "necessary element of a breach of contract claim is proximately caused damages." Mot. at 1. Transamerica therefore contends that plaintiffs' breach of contract claim is subject to dismissal because: (1) the death benefit is not recoverable because plaintiffs do not allege that the insured died while they were the beneficiaries or that the Policy was wrongfully cancelled; (2) plaintiffs cannot recover the purchase price of the Policy, the premiums paid, or emotional distress damages because

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:19-cv-10478-CAS(GJSx) | Date | March 23, 2020 |
| Title | STEVEN DRAEGER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY |

none of these categories of damages "is recoverable for breach of contract except in narrow circumstances not alleged or applicable here"; and (3) "California law does not permit the recovery of interest on borrowed funds in a breach of contract action." Mot. at 1.

To state a claim for breach of contract under California law, a party must plead: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011) (internal citation omitted). Transamerica does not appear to dispute whether plaintiffs have adequately stated a claim for breach of contract pursuant to California law. Indeed, plaintiffs specifically allege that: (1) plaintiffs owned a universal life insurance policy issued by Transamerica; (2) plaintiffs "performed all obligations on their part to be performed under the Policy"; (3) "Transamerica . . . breached the terms of the Policy owned by" plaintiffs; and (4) "[a]s a direct and proximate result of Transamerica's reach . . . [plaintiffs suffered damages[.]" FAC ¶¶ 6–8, 35, 39.

Instead, Transamerica appears to challenge the categories of damages that plaintiffs seek for Transamerica's alleged breach. See Mot. at 8–9 ("Plaintiffs' breach of contract claim is subject to dismissal to the extent it seeks each of these specifically pleaded damages because they are unavailable to [p]laintiffs as a matter of law."). The Court need not decide, at the pleading stage, however, the scope of damages that plaintiffs may recover should plaintiffs ultimately prevail on their breach of contract claim. See Spann v. J.C. Penney Corp., No. 8:12-cv-00215-FMO-KES, 2015 WL 1526590, at *4 (C.D. Cal. Mar. 17, 2015) ("When a plaintiff states a claim, the appropriate form of relief is not to be decided upon a motion to dismiss."); Summit Tech., Inc. v. High-Line Med. Instruments, Co., 933 F. Supp. 918, 927–28 (C.D. Cal. 1996) ("a Rule 12(b)(6) motion will not be granted merely because a plaintiff requests a remedy to which he or she is not entitled."); Asher v. Reliance Ins. Co., 308 F. Supp. 847, 851 (N.D. Cal. 1970) (denying motion to dismiss breach of contract claim where defendant contended that "punitive, consequential, and mental suffering damages are prayed for, but that none of these are allowable" because "even were all these items of damage impermissible forms of recovery, the motion to dismiss would have to be denied because some form of relief, such as compensatory damages, would certainly be available to remedy a breach of contract.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:19-cv-10478-CAS(GJSx) | Date | March 23, 2020 |
|---|---|---|---|
| Title | STEVEN DRAEGER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

### B.     Tortious Breach of the Implied Covenant Claim

Plaintiffs appear to assert, pursuant to California law, a claim for tortious breach of the implied covenant of good faith and fair dealing.[1]  FAC ¶¶ 40–45.  In particular, plaintiffs allege that Transamerica breached the implied covenant by "increasing the Monthly Deduction Rate to recoup past losses and offset interest crediting guarantees[.]" Id. ¶ 43.

The Court has previously distinguished between allegations that Transamerica withheld the benefits of policyholders' accumulation values and the monthly accrual of interest on those accounts with allegations that Transamerica has attempted, in bad faith, to cause policy lapses or surrenders.  See, e.g., Brighton Trustees v. Transamerica Life Ins. Co., No. 2:19-cv-04210-CAS-GJS, 2019 WL 5784925, at *3 (C.D. Cal. Nov. 4, 2019). The Court has concluded that allegations that Transamerica charged excessive MDRs in an attempt to minimize policyholders' accumulation values and accrual of interest on those accounts do not give rise to a claim for breach of the implied covenant sounding in tort. That is because "these benefits arise under the *savings* component of Transamerica's universal life insurance policies rather than the *insurance* component."  Wells Fargo Bank, Nat'l Ass'n v. Transamerica Life Ins. Co., No. 2:19-cv-06478-CAS-GJS, 2020 WL 833518, at *9 (C.D. Cal. Feb. 19, 2020) (emphases in original) (internal alterations omitted).  Accordingly, to the extent that plaintiffs' tortious breach claim is premised on allegations regarding plaintiffs' accumulation values and the accrual of interest on those values, the Court **DISMISSES** plaintiffs' tortious breach claim **without prejudice**.

The Court has previously determined that certain policyholders could maintain a claim for tortious breach based on allegations that Transamerica has attempted, in bad faith, to cause policy lapses or surrenders through its MDR increases.  For example, in Thompson v. Transamerica Life Ins. Co., the Court determined that a putative class of elderly insureds had stated a claim for tortious breach against Transamerica.  No. 2:18-cv-05422-CAS-GJS, 2018 WL 6790561, at *11 (C.D. Cal. Dec. 26, 2018).  In Thompson, the Court reasoned that "extending the tort remedy to this context is justified to deter insurers from unreasonably increasing premiums to induce early surrender or lapses of life insurance

---

[1]     Plaintiffs do not specifically allege whether their claim for breach of the implied covenant sounds in contract or in tort.  However, plaintiffs seek punitive damages in connection with this claim.  See FAC ¶ 45.

| | **CIVIL MINUTES – GENERAL** | | **'O'** | |
|---|---|---|---|---|
| Case No. | 2:19-cv-10478-CAS(GJSx) | Date | March 23, 2020 | |
| Title | STEVEN DRAEGER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | | |

policies held by people who cannot turn to the market and obtain another policy due to the advanced age of the insureds." Thompson, 2018 W; 6790561, at *11.

In subsequent cases challenging Transamerica's MDR increases, the Court has declined to extend the tort remedy to institutional investors that have purchased Transamerica's universal life insurance policies on the secondary market. See, e.g., Brighton, 2019 WL 5784925, at *6; Wells Fargo, 2020 WL 833518, at *11; EFG Bank AG, Cayman Branch v. Transamerica Life Ins. Co., No. 2:16-cv-08104-CAS-GJS, 2020 WL 636907, at *9 (C.D. Cal. Feb. 10, 2020). That is because the Court has concluded that policy considerations do not support extending the tort remedy to these institutional investor plaintiffs. See Brighton, 2019 WL 5784925, at *6. In reaching this determination, the Court has considered the following factors: "(1) the ability of marketplace competition to discipline the insurer's alleged misconduct; (2) whether the alleged misconduct denies the insured the benefits of the insurance policy, namely the security against losses and third party liability; (3) whether the alleged misconduct required the insureds to prosecute the insurer in order to enforce its rights; and (4) the availability of other administrative, contractual, and tort remedies." Id. (citing Jonathan Neil & Assoc., Inc. v. Jones, 33 Cal. 4th 917, 940–41 (2004)).

Here, plaintiffs allege that "through the sudden and massive Monthly Deduction Rate increase[,] . . . Transamerica attempted to . . . shed the affected policies by making the premiums to maintain them cost-prohibitive for the policyholders" and that this increase "caused [plaintiffs] to be unable to maintain sufficient premium payments to keep the accumulation account positive and keep the Policy in force." FAC ¶¶ 37–38. Construing these allegations in the light most favorable to plaintiffs, the Court concludes that plaintiffs have alleged that Transamerica increased MDRs in an attempt to cause policy lapses or surrenders. The Court notes, however, that plaintiffs are *not* the original insured under the Policy and instead "purchased the Policy from its-then owner for approximately $430,000." Id. ¶ 7. Plaintiffs subsequently sold the policy for $150,000. Id. ¶ 38.

Plaintiffs contend that notwithstanding the fact that they are not the insured under the Policy, Brighton is distinguishable because "[u]nlike Brighton, which involved claims made by investment trusts who purchased the policies for investment purposes, in this case, the evidence shows that Mr. Draeger purchased the policy because he could not obtain life insurance on his own life due to his age and pre-existing cancer diagnosis and he purchased it not as an investment, but rather for the security and peace of mind of his family upon his

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-10478-CAS(GJSx) | Date | March 23, 2020 |
|---|---|---|---|
| Title | STEVEN DRAEGER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

death." Opp. at 8. However, the FAC is devoid of any allegations to this effect.[2] Similarly, the FAC contains no allegations from which the Court can conclude that, considering the factors articulated by the California Supreme Court in Jonathan Neil, plaintiffs are more similarly situated to the plaintiffs in Thompson than those in Brighton.

To the extent that plaintiffs seek to recover in tort based on their claim for breach of the implied covenant, the Court **DISMISSES** plaintiffs' claim **without prejudice**.

### C.     Intentional Misrepresentation Claim

Plaintiffs assert a claim for intentional misrepresentation and concealment pursuant to California law. See FAC ¶¶ 46–55. "The elements of intentional misrepresentation in California are: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud or to induce reliance; (4) justifiable reliance; and (5) resulting damage." Yastrab v. Apple Inc., 173 F. Supp. 3d 972, 977–78 (N.D. Cal. 2016). Transamerica seeks to dismiss plaintiffs' intentional misrepresentation claim on several grounds. The Court addresses each in turn.

### 1.     Plaintiffs' Purported Disavowal of Pre-2015 Conduct

As an initial matter, Transamerica argues that the Court should dismiss plaintiffs' intentional misrepresentation claim because Transamerica's "purported misrepresentations in illustrations created in September 2011" form the basis for plaintiffs' claim, but "[p]laintiffs unequivocally disavow that any of their claims are based on any conduct prior to August 2015[.]" Mot. at 14. Indeed, the FAC contains an allegation that "[t]o be abundantly clear, [p]laintiffs in this action allege no claim premised on conduct prior to Transamerica's actions in imposing the Monthly Deduction Rate Increase beginning in August 2015." FAC ¶ 32 n.1. In opposition to Transamerica's motion to dismiss, plaintiffs argue that this allegation "is a clerical error," that they "obviously have alleged their causes of action of intentional misrepresentation and concealment based on conduct which

---

[2]     Instead, plaintiffs raise these contentions for the first time in their opposition to Transamerica's motion to dismiss. Moreover, plaintiff Steven Draeger submits a declaration, attesting to these contentions, in connection with plaintiffs' opposition. See Dkt. 19-1. However, "[u]nless a court converts a Rule 12(b)(6) or 12(c) motion into a motion for summary judgment, a court generally cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials)." Optima Tax Relief LLC v. Channel Clarity, Inc., No. 8:14-cv-1902-JLS-JCG, 2015 WL 12765016, at *2 (C.D. Cal. Aug. 26, 2015).

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:19-cv-10478-CAS(GJSx) | Date | March 23, 2020 |
|---|---|---|---|
| Title | STEVEN DRAEGER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

occurred prior to August 2015," and that the FAC "can be amended easily to eliminate this confusion." Opp. at 10.

Another district court in the Ninth Circuit has considered, and rejected, Transamerica's argument in a different case challenging Transamerica's MDR increases. See James Erickson Family P'ship LLLP v. Transamerica Life Ins. Co., No. 18-cv-04566-PHX-DWL, 2019 WL 4673337, at *3 (D. Ariz. Sept. 25, 2019). In that case, the owner of a Transamerica universal life insurance policy asserted a fraud claim, pursuant to Arizona law, on the basis that Transamerica's 2006 policy illustrations were misleading in that they suggested that premiums would stay constant at the illustrated amounts during the life of the policy. Id. at *5. The owner's complaint, however, contained an allegation that "[t]o be abundantly clear, Plaintiff in this action alleges no claim premised on conduct prior to the sale of the Policy; Plaintiff's claims are instead exclusively premised on Transamerica's action in imposing COI increases beginning in August 2015." Id. at *3. The Court noted that although "a notice of errata is not a proper way to amend a complaint[,] . . . it is clear . . . that [the owner's] claims are based on conduct occurring before August 2015." Id. Accordingly, the court concluded that it "w[ould] not dismiss any claims under the theory that they are foreclosed by footnote one in the [operative complaint]." Id.

The Court notes that "Federal Rule of Civil Procedure 8 allows parties to plead inconsistent factual allegations in the alternative." Wi-LAN Inc. v. LG Elecs., Inc., 382 F. Supp. 3d 1012, 1021 (S.D. Cal. 2019). Accordingly, the Court declines to dismiss plaintiffs' intentional misrepresentation claim on the basis of plaintiffs' purported disavowal of Transamerica's pre-2015 conduct in ¶ 32 n.1 of the FAC. Should plaintiffs choose to file a second amended complaint, however, plaintiffs should clarify the allegation contained in ¶ 32 n.1 of the FAC as well as the temporal period that serves as the basis for plaintiffs' claims.

### 2. Intentional Misrepresentation Based on Omissions

Plaintiffs allege that "[t]he illustration of September 6, 2011 and September 26, 2011 were false, misleading, grossly inaccurate, and fraudulent, in that throughout September, [sic] 2011, when [Transamerica] was representing that a level premium ranging from $52,310 to $66,356 would maintain the Policy to ages of the insured ranging from 95 to 100, Transamerica knew it had suffered . . . prolonged losses . . . due to the years of low interest rates it had been earning and higher or nearly as high interest rates it had been crediting to universal life policies, and thus knew" that annual premiums ranging from

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:19-cv-10478-CAS(GJSx) | Date | March 23, 2020 |
|----------|--------------------------|------|----------------|
| Title | STEVEN DRAEGER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

$52,310 to $66,356 would be insufficient to keep the Policy in force. FAC ¶ 49. "Nevertheless, and with that knowledge, Transamerica knowingly made the false representations in the September 6, 2011 and September 26, 2011 illustrations that" annual payments ranging from $52,310 to $66,356 "would enable [plaintiffs] to maintain the Policy until the insured's age 100." Id. According to plaintiffs, "Transamerica had a duty to disclose to [plaintiffs] that in addition to other factors listed that could increase premiums, Transamerica had been earning low rates of interest for years and had been encountering lower-than-sustainable lapse rates, and continued low rates of earnings, or a need to increase lapse rates in order to increase profitability, were factors that could result in multiple times the existing premium, or Monthly Deduction rates, being charged." Id. ¶ 50. Put differently, plaintiffs contend that "they have reached out to the insurance company regarding the amount of the premiums. Despite, [sic] knowing this concern, the insurance company failed to disclose that the premiums would be substantially increased." Opp. at 10.

Transamerica seeks dismissal of plaintiffs' intentional misrepresentation claim on the basis that plaintiffs "do not allege any facts establishing that [Transamerica] had a duty of disclosure that will support their intentional misrepresentation claim[.]" Mot. at 15. Transamerica argues that "no duty of disclosure of the allegedly omitted information exists as a matter of law." Id. Transamerica also contends that "the disclosure requirements for the contents of life insurance illustrations like those challenged by [p]laintiffs are codified in the California Insurance Code." Id. Transamerica therefore asserts that "[b]ecause no such disclosure duty exists at common law or by statute, [p]laintiffs' claim based on alleged omissions should be dismissed[.]" Id. at 16.

"An intentional misrepresentation claim may be based on an omission[.]" Oskoui v. JPMorgan Chase Bank, No. 2:12-cv-3511-GW-AGR, 2012 WL 13124267, at *2 (C.D. Cal. June 21, 2012) (citing Lopez v. Nissan N. Am., Inc., 201 Cal.App.4th 572, 596 (2011)). "[F]or liability to attach for mere non-disclosure, the defendant must have been under some 'duty to disclose' the information, arising from either: (1) a contractual, confidential, or fiduciary relationship, or (2) the making of affirmative representations which are materially qualified or undermined by undisclosed facts." Hathaway v. Hathaway, No. 2:09-cv-01123-GHK-CT, 2009 WL 10673230, at *6 (C.D. Cal. Sept. 29, 2009). Thus, a "duty to disclose can arise from the making of affirmative representations with knowledge of undisclosed facts that materially qualify the facts disclosed . . . or render the disclosed facts likely to mislead." Id. (internal alterations omitted) (citing Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC, 162 Cal. App. 4th 858, 877 (2008)). That is because

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:19-cv-10478-CAS(GJSx) | Date | March 23, 2020 |
| Title | STEVEN DRAEGER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

"[a]lthough a duty to disclose a material fact normally arises only where there exists a confidential relation between the parties or other special circumstances require disclosure, where one does speak he must speak the whole truth to the end that he does not conceal any facts which materially qualify those stated. One who is asked for or volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud." Cicone v. URS Corp., 183 Cal. App. 3d 194, 201 (1986).

The Court need not decide, at the pleading stage, whether a "special" relationship exists between plaintiffs and Transamerica or whether Transamerica's September 2011 illustrations complied with the California Insurance Code's requirements. Here, plaintiffs allege that in its September 6, 2011 and September 26, 2011 illustrations, Transamerica represented that plaintiffs would need to make annual premium payments ranging from $52,310 to $66,356 to keep the Policy in force until the insured reached age 100. FAC ¶¶ 47–48. Despite these representations, however, plaintiffs allege that "Transamerica . . . knew that the $52,310 annual premium was not, in fact, sustainable to keep the Policy in force until insured reached age 95 and that the $66,356 annual premium was not, in fact, sustainable to keep the Policy in force until the insured reached age 100." Id. ¶ 49. These allegations, taken as true, tend to establish that Transamerica's representations in the September 6, 2011 and September 26, 2011 illustrations are misleading in that they suggest that Transamerica's premiums would stay constant at the illustrated amounts during the life of the policy, despite Transamerica's knowledge that "the annual premium could more than triple." Id. ¶ 51. See Erickson Family, 2019 WL 4673337, at *3 (D. Ariz. Sept. 25, 2019) (finding that owner of Transamerica policy had stated fraud claim against Transamerica based on allegations "that the 2006 policy illustration was misleading because it suggested the policy was sustainable at the premium amounts used in the illustration."); Patricia Bugher Family P'ship LLLP v. Transamerica Life Ins. Co., No. 18-cv-04629-PHX-GMS, 2019 WL 2744843, at *2 (D. Ariz. July 1, 2019) (determining that owner of Transamerica policy had stated a fraud claim against Transamerica where the owner "alleges that Transamerica issued annual illustrations and other informational graphics that did not contain accurate representations of the Policy's value" and "issued the policy despite knowing that the illustrations were not an accurate depiction of the value of these policies.").[3]

---

[3] The Court recognizes that the plaintiffs in Erickson Family and Bugher Family asserted fraud claims pursuant to the Arizona Consumer Fraud Act ("ACFA"). However, a "false promise or misrepresentation" is an element of an ACFA claim. See Holeman v.

CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:19-cv-10478-CAS(GJSx) | | Date | March 23, 2020 |
|---|---|---|---|---|
| Title | STEVEN DRAEGER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | | |

### 3.    Existence of Disclaimer in Illustrations

Transamerica argues that plaintiffs' intentional misrepresentation claim fails because "the illustrations, which are not contracts, did not guarantee that these premium levels would sustain the Policy until the insured was between 95 to 100 years old." Mot. at 16.  Transamerica asserts that each illustration at issue in this case "states that the projections are subject to change" and contain the following disclaimer:

> CHANGES TO THE CURRENT INTEREST RATE OR POLICY CHARGES MAY RESULT IN ADDITIONAL PREMIUM PAYMENTS BEING REQUIRED TO KEEP THE POLICY IN FORCE[.]

Mot. at 17.[4]  According to Transamerica, "the illustrations also expressly told [p]laintiffs the 'actual results are likely to be different from and may be more or less favorable than those shown in those illustration.'"  Mot. at 17 (internal alterations and citations omitted).

The Court finds instructive Broberg v. The Guardian Life Ins. Co. of Am., 171 Cal. App. 4th 912 (2009).  There, an insured asserted a fraud claim against its insurer based on

---

Neils, 803 F. Supp. 237, 242 (D. Ariz. 1992).  Because, pursuant to California law, a duty to disclose can arise based on an affirmative misrepresentation, the courts' conclusions in Erickson Family and Bugher Family that Transamerica's alleged illustrations-related conduct constituted a "misrepresentation" for purposes of the ACFA are instructive to the Court's analysis here with respect to Transamerica's duty to disclose.

[4]    In connection with its motion to dismiss, Transamerica submits copies of the two September 2011 policy illustrations at issue in this case.  See Dkt. 17-1; Dkt. 17-2. Although plaintiffs do not attach copies of these policy illustrations to the FAC, the FAC explicitly refers to them, and plaintiffs do not appear to contest the authenticity of the two purported illustrations that Transamerica submits in support of its motion.  Accordingly, the Court may consider them in connection with Transamerica's motion to dismiss.  See Casault v. Fed. Nat. Mortg. Ass'n, 915 F. Supp. 2d 1113, 1120 (C.D. Cal. 2012) ("Under the incorporation by reference doctrine, the court may also consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.").

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-10478-CAS(GJSx) | Date | March 23, 2020 |
| Title | STEVEN DRAEGER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

the insured's "vanishing life insurance policy."[5] Broberg, 171 Cal. App. 4th at 916. The insured alleged that "misleading marketing materials," including a policy illustration, "represented out-of-pocket premium costs would be eliminated the 12th year of the policy's life[.]" Id. at 915. The third page of the policy illustration "contain[ed] a single, lengthy endnote . . . with various conditions, qualifications and limitations" including a disclaimer that "[f]igures depending on dividends are neither estimated nor guaranteed, but are based on the 1993 dividend scale. Actual future dividends may be higher or lower than those illustrated depending on the company's actual future experience." Id. at 917. The California Court of Appeal rejected the insurer's argument that, as a matter of law, the existence of the disclaimer barred the insured's fraud claim. Id. at 921. That is because "[t]he adequacy of a disclaimer in the context of an action for fraud is judged by reference to the plaintiff's knowledge and experience: [o]nly if the conduct of the plaintiff in relying upon a misrepresentation in light of his own intelligence and information was manifestly unreasonable will he or she be denied recovery." Id. (internal citations and alterations omitted).

Here, the relevant disclaimers appear on the second page of the September 6, 2011 illustration and on the third page of the September 26, 2011 illustration. See Dkt. 17-1; Dkt. 17-2. And, plaintiffs specifically allege that they relied on the premium representations in those illustrations. See FAC ¶ 54 ("As a direct and proximate result of . . . the September 6, 2011 and September 26, 2011 illustrations from Transamerica, [plaintiffs] made decisions to retain the [P]olicy and budget for the calculated premium[.]"). Accordingly, the Court concludes that the adequacy of the disclaimers in Transamerica's September 2011 illustrations and plaintiffs' reliance on the premium representations in those illustrations are matters not suitable for resolution at the pleading stage. See Broberg, 171 Cal. App. 4th at 922 (determining that the trial court erred in sustaining the insurer's demurrer because "there is a question for the trier of fact concerning the presence or absence of a manifest unreasonableness in [the insured's] reliance on [the insurer's] deceptive policy illustration[.]").

---

[5]     A "vanishing life policy" is "one where, after a certain number of out-of-pocket premium payments had been made, the policy itself would generate sufficient sums through its dividend and interest income to pay future premiums for the balance of the insured's life." Broberg, 171 Cal. App. 4th at 916.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-10478-CAS(GJSx) | Date | March 23, 2020 |
| Title | STEVEN DRAEGER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

### 4.    Illustrations as Future Projections

Transamerica argues that "[i]t is a general rule that predictions as to future events, or statements as to future actions by some third party, are deemed opinions, and not actionable fraud." Mot. at 18. As such, Transamerica seeks dismissal of plaintiffs' intentional misrepresentation claim on the grounds that "it is based on non-actionable predictions." Id. at 17–18 (internal citation and quotation marks omitted).

Pursuant to California law, "predictions as to future events are ordinarily non-actionable expressions of opinion under basic principles of the tort of fraudulent misrepresentation." Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n, 366 F.3d 692, 698 (9th Cir. 2004) (internal citation omitted). "There is, however, a well-established exception—if 'the speaker has knowledge of facts not warranting the opinion.'" PhotoMedex, Inc. v. Irwin, 601 F.3d 919, 931 (9th Cir. 2010) (citing Richard P. v. Vista Del Mar Child Care Serv., 106 Cal. App. 3d 860, 865 (1980)). Thus, "[a]n honest or sincere statement of belief about a future event is not actionable, but a statement known at that time by the speaker to be false . . . may constitute an actionable misrepresentation." PhotoMedex, 601 F.3d at 931. "Typically, "whether a statement is nonactionable opinion or actionable misrepresentation of fact is a question of fact for the jury." Id. (citing Furla v. Jon Douglas Co., 65 Cal.App.4th 1069, 1081 (1998)).

Here, plaintiffs allege that "Transamerica knowingly made the false representations in the September 6, 2011 and September 26, 2011 illustrations that" annual payments ranging from $52,310 to $66,356 "would enable [plaintiffs] to maintain the Policy until the insured's age 100." FAC ¶ 49. Plaintiffs further allege that "Transamerica has over a century of experience in the life insurance business[.]" Id. ¶ 53. Thus, to the extent that Transamerica's representations in its September 2011 illustrations constitute "predictions as to future events" that are generally not actionable, these representations fall within the exception where "the relationship of the parties and the circumstances under which the opinion was expressed were such as to imply a superior knowledge by the defendant of the subject matter of the representation." Borba v. Thomas, 70 Cal. App. 3d 144, 153 (1977).

### D.    Negligent Misrepresentation Claim

Plaintiffs assert a claim for negligent misrepresentation claim against Transamerica. See FAC ¶¶ 56–60."To allege a cause of action for negligent misrepresentation, Plaintiff must plead: (1) the misrepresentation of a past or existing material fact; (2) without reasonable ground for believing it to be true; (3) with intent to induce another's reliance on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:19-cv-10478-CAS(GJSx) | Date | March 23, 2020 |
| Title | STEVEN DRAEGER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

the fact misrepresented; (4) justifiable reliance on the misrepresentation; and (5) resulting damage." Rockridge Tr. v. Wells Fargo, N.A., 985 F. Supp. 2d 1110, 1162 (N.D. Cal. 2013). Transamerica moves to dismiss plaintiffs' negligent misrepresentation claim on several grounds.

First, Transamerica argues that plaintiffs' negligent misrepresentation claim fails "[b]ecause [p]laintiffs expressly allege that they are not suing on any pre-August 2015 conduct[.]" Mot. at 18. The Court has already rejected this argument with respect to plaintiffs' intentional misrepresentation claim and therefore declines to dismiss plaintiffs' negligent misrepresentation claim on this basis.

Second, Transamerica contends that plaintiffs' negligent misrepresentation claim fails "[b]ecause [p]laintiffs purport to ground their claim on alleged omissions . . . which is not permitted under California law[.]" Mot. at 19. The Court notes that "unlike fraud, negligent misrepresentation requires a positive assertion to show a misrepresentation of material fact; an omission or an implied assertion will not suffice." UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc., 117 F. Supp. 3d 1092, 1111 (C.D. Cal. 2015) (internal citation omitted). Here, plaintiffs allege that "[a]t the times Transamerica issued its September 6, 2011 and September 26, 2011 in-force illustrations representing that as of those dates, level annual premiums of $52,310 and $66,356 were required to keep the Policy in effect until the insured reached age 95 and 100, respectively, Transamerica . . . knew or should have known that . . . the Policy would require more than a $52,310 annual premium to keep it in force until the insured reached age 95 and more than a $66,356 annual premium to keep it in force until the insured reached age 100." FAC ¶ 57. Accordingly, Transamerica's argument is unavailing because plaintiffs allege that Transamerica made *affirmative* misrepresentations.

Transamerica also seeks dismissal of plaintiffs' negligent misrepresentation claim on the grounds that "the illustrations do not set premium levels for the future, but only project performance at a given funding level" and "non-guaranteed" since they contain a disclaimer that "actual results are likely to be different from and may be more or less favorable than those shown in this illustration." Mot. at 19–20. The Court already rejected Transamerica's argument on this basis with respect to plaintiffs' intentional misrepresentation claim based on the California Court of Appeal's opinion in Broberg. And, in Broberg, the insured likewise asserted a claim for negligent misrepresentation, and the Court of Appeal's determination that the existence of a disclaimer in the policy

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-10478-CAS(GJSx) | Date | March 23, 2020 |
| Title | STEVEN DRAEGER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

illustration did not, as a matter of law, bar the insured's fraud claim likewise applied to the insured's negligent misrepresentation claim. See Broberg, 171 Cal. App. 4th at 922.

Finally, Transamerica argues that plaintiffs' "negligent misrepresentation claim, like their intentional misrepresentation claim, also fails to state a claim because it is based entirely on projections or opinions about the future which are not actionable." Mot. at 20. There appears to be a disagreement among courts regarding whether, as with a claim for intentional misrepresentation, exceptions exist to the general rule that predictions as to future events cannot serve as the bases for a negligent misrepresentation claim. For example, a district court in the Northern District of California has determined that "a negligent misrepresentation claim must be based on a misrepresentation of past or existing material facts and not on a promise or prediction as to future events." Colgate v. JUUL Labs, Inc., 345 F. Supp. 3d 1178, 1195 (N.D. Cal. 2018); see also Stockton Mortg., Inc. v. Tope, 233 Cal. App. 4th 437, 458 (2014) ("Although a false promise to perform in the future can support an intentional misrepresentation claim, it does not support a claim for negligent misrepresentation.").

On the other hand, at least one district of the California Court of Appeal has recognized that while "[g]enerally, actionable misrepresentation must be one of existing fact, . . . there are exceptions to this rule: (1) where a party holds himself out to be specially qualified and the other party is so situated that he may reasonably rely upon the former's superior knowledge; (2) where the opinion is by a fiduciary or other trusted person; and (3) where a party states his opinion as an existing fact or as implying facts which justify a belief in the truth of the opinion." Cohen v. S & S Constr. Co., 151 Cal. App. 3d 941, 946 (1983). Accordingly, the Court of Appeal in Cohen determined, at the pleading stage, that plaintiffs' negligent misrepresentation claim, based on a prediction as to a future event, could proceed because they "have pleaded sufficient facts to meet the requisites of each exception." Id. At least one district court has cited Cohen with approval. See Mueller v. San Diego Entm't Partners, LLC, No. 16-cv-2997-GPC-NLS, 2017 WL 3387732, at *9 (S.D. Cal. Aug. 7, 2017) (denying motion to dismiss plaintiff's negligent misrepresentation claim based on opinion as to future events because plaintiff's claim "fall[s] under the exception 'where a party states his opinion as an existing fact or as implying facts which justify a belief in the truth of the opinion.'").

Following the hearing, the parties submitted supplemental briefing to the Court regarding the split of authority as to whether a prediction as to future events may serve as the basis for a negligent misrepresentation claim. Transamerica relies on the Ninth

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-10478-CAS(GJSx) | Date | March 23, 2020 |
|---|---|---|---|
| Title | STEVEN DRAEGER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Circuit's unpublished opinion in <u>GR Corp. v. Amway Corp.</u>, where the Ninth Circuit determined that a district court did not err in granting summary judgment on a plaintiff's negligent misrepresentation claim because "[n]egligent misrepresentation must relate to past or existing material facts in order to be actionable under California law" and it was undisputed that the defendants' "negligence involved future promises[.]" <u>See</u> 28 F. App'x 709, 711 (9th Cir. 2002). In addition to being unpublished and arising in the summary judgment context, <u>GR Corp.</u> does not acknowledge the California Court of Appeal's opinion in <u>Cohen</u>. <u>See generally</u> <u>GR Corp.</u>, 28 F. App'x 710. Similarly, <u>GR Corp.</u> is distinguishable from the allegations this case in that <u>GR Corp.</u> did not mention or implicate any of the three exceptions to the general rule that an actional misrepresentation must be one of existing fact.[6] In <u>GR Corp.</u>, an independent sales representative brought suit against a retailer and manufacturer, alleging that after the representative arranged an alliance between the retailer and manufacturer, the retailer and manufacturer failed to compensate the representative. <u>Id.</u> The Ninth Circuit expressly determined that "[t]he district court correctly concluded that there is a 'vacuum' of evidence establishing that either [the retailer] or [the manufacturer] individually, intended to compensate [the representative]." <u>Id.</u> To the contrary, "[w]hen [the retailer] stated that it 'does not intent to fund [the representative],' [the representative] could not reasonably presume an alternate mode of payment *by* [the retailer], especially since no details of such an alternate arrangement were ever discussed." <u>Id.</u> at 711.

Here, the Court has already determined that plaintiff's intentional misrepresentation claims, based on predictions as to future events, fall within the exception where "the relationship of the parties and the circumstances under which the opinion was expressed were such as to imply a superior knowledge by the defendant of the subject matter of the representation." Plaintiffs' negligent misrepresentation claim is premised on that same theory, and <u>Cohen</u> recognizes that a claim for negligent misrepresentation may lie on that theory. Accordingly, the Court concludes that <u>GR Corp.</u>, which neither cites <u>Cohen</u> nor

---

[6]     The three exceptions identified in <u>Cohen</u> include "(1) where a party holds himself out to be specially qualified and the other party is so situated that he may reasonably rely upon the former's superior knowledge; (2) where the opinion is by a fiduciary or other trusted person; and (3) where a party states his opinion as an existing fact or as implying facts which justify a belief in the truth of the opinion." 151 Cal. App. 3d at 946.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-10478-CAS(GJSx) | Date | March 23, 2020 |
| Title | STEVEN DRAEGER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

presents a factual scenario implicating the "superior knowledge" exception, does not require dismissal of plaintiffs' negligent misrepresentation claim at the pleading stage.

In accordance with the foregoing, the Court **DENIES** Transamerica's motion to dismiss plaintiffs' negligent misrepresentation claim.

### E.     UCL Claim

Plaintiffs assert a UCL claim against Transamerica and contend that they "are entitled to restitution of the money they paid in premium to Transamerica during the time they owned the Policy, as well as the purchase price paid for the Policy, which constituted a recoupment of premium that the prior owner had paid to Transamerica." FAC ¶¶ 61–65. To state a claim for unfair competition pursuant to the UCL, a plaintiff must allege an "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Because [the UCL] is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." Boschma v. Home Loan Ctr., Inc., 198 Cal. App. 4th 230, 252 (2011). Here, plaintiffs' UCL claim is premised on alleged violations of the UCL's "unlawful" and "unfair" prongs. FAC ¶ 63.

### 1.     Unlawful Prong

Transamerica argues that "[p]laintiffs' UCL claim is [subject] to dismissal to the extent it is based on 'unlawful' conduct" because, according to Transamerica, "a plaintiff cannot predicate UCL 'unlawful' claims on mere common law violations." Mot. at 23. The Court has previously sustained, at the pleading stage, similar claims against Transamerica based on the UCL's "unlawful" prong. See, e.g., DCD Partners, LLC. v. Transamerica Life Ins. Co., No. 2:15-cv-03238-CAS-VBK, 2015 WL 5050513, at *10 (C.D. Cal. Aug. 24, 2015) ("Because the Court finds that plaintiffs have adequately alleged a claim for tortious breach of the covenant of good faith the Court also finds that plaintiffs have stated a claim under the 'unlawful' prong of the UCL."); but see Feller v. Transamerica Life Ins. Co., No. 2:16-cv-01378-CAS-AJW, 2016 WL 6602561, at *13 (C.D. Cal. Nov. 8, 2016) ("Plaintiffs argue that they have stated a claim under the 'unlawful' prong of the UCL predicated upon their tortious breach of the covenant of good faith and fair dealing. Defendant argues that a claim under the UCL's 'unlawful' prong cannot be predicated on a common law claim. . . . [i]nsofar as plaintiffs allege an 'unlawful' act in violation of the UCL, it may not be predicated upon their tortious breach of the covenant of good faith and fair dealing claim.").

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:19-cv-10478-CAS(GJSx) | Date | March 23, 2020 |
| Title | STEVEN DRAEGER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

"Virtually any law or regulation—federal or state, statutory *or common law*—can serve as predicate for a § 17200 'unlawful' violation." William L. Stern, Business and Professions Code § 17200 Practice, 3:56 (Rutter Group 2019 ed.) (emphasis added). "A 'common law violation such as breach of contract is insufficient,' standing alone, to support a UCL claim." Netlist, Inc. v. Diablo Techs., Inc., No. 13-cv-5962-YGR, 2015 WL 1887261, at *3 (N.D. Cal. Apr. 24, 2015) (citing Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1044 (9th Cir. 2010)).

Here, the Court has already determined that plaintiffs have stated a claim for intentional misrepresentation pursuant to California law. Accordingly, the Court declines to dismiss plaintiffs' UCL claim, premised on the UCL's unlawful prong, on this basis. See Izsak v. Wells Fargo Bank, N.A., No. 13-cv-05362-SI, 2014 WL 1478711, at *6 (N.D. Cal. Apr. 14, 2014) (declining to dismiss UCL claim under "unlawful" prong because "the Court has not dismissed plaintiff's claims for intentional misrepresentation, negligent misrepresentation, and promissory estoppel" and "[t]hese common law causes of action may serve as the predicate unlawful conduct for plaintiff's UCL claim.").

## 2. Adequacy of Remedy

Transamerica also contends "[p]laintiffs' alleged UCL violations fail because [p]laintiffs have an adequate remedy at law." Mot. at 20. That is because, according to Transamerica, "[p]laintiffs do not request injunctive relief, instead alleging only that they are entitled to" restitution. Id. at 21. Transamerica therefore contends that the Court "may dismiss at the pleading stage a UCL claim where the plaintiff fails to plausibly allege it lacks an adequate remedy at law[.]"[7] Id.

"While the scope of conduct covered by the UCL is broad, its remedies are limited." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1144 (2003). "Prevailing plaintiffs are generally limited to injunctive relief and restitution." Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 179, (1999). "Statutory relief under the UCL is subject to fundamental equitable principles, including inadequacy of the legal

---

[7]     The Court has previously rejected Transamerica's argument in other cases challenging Transamerica's MDR increases. See Hamra v. Transamerica Life Ins. Co., No. 2:18-cv-06262-CAS-GJS, 2019 WL 468803, at *11 (C.D. Cal. Feb. 6, 2019); accord Thompson, 2018 WL 6790561, at *13. The Court notes that, unlike the plaintiffs in Hamra and Thompson, however, plaintiffs in this case do not appear to be seeking junctive relief.

| | | | |
|---|---|---|---|
| **CIVIL MINUTES – GENERAL** | | | **'O'** |
| Case No. | 2:19-cv-10478-CAS(GJSx) | Date | March 23, 2020 |
| Title | STEVEN DRAEGER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

remedy." <u>LaFontaine v. Mitsubishi Motors No. Am., Inc.</u>, No. 8:16-cv-00943-JVS-FFM, 2017 WL 8220705, at *7 (C.D. Cal. Feb. 23, 2017).

The Court finds instructive <u>James ex rel. James Ambrose Johnson, Jr.1999 Tr. v. UMG Recordings</u>, No. 11-cv-1613-SI, 2011 WL 5192476 (N.D. Cal. Nov. 1, 2011). In that case, putative classes of royalty participants sued a record label, alleging that the record label failed to properly account for and pay its recording artists and music producers for income it had received from licensees of the label's recorded music catalog. <u>Id.</u> at *1. The plaintiffs asserted claims against the record label for both breach of contract and violation of the UCL. <u>Id.</u> The record label moved to dismiss the plaintiffs' UCL claim on the grounds that "plaintiffs cannot seek restitution and injunctive relief, the two remedies available under the UCL, because plaintiffs seek damages for breach of contract." <u>Id.</u> at *5 n.3. The court rejected the record label's argument because plaintiffs "may plead alternative theories of recovery for the same conduct" and "questions about the appropriateness of specific remedies are premature at this stage of the litigation." <u>UMG Recordings</u>, 2011 WL 5192476, at *5 n.3.

The Court therefore concludes that, at this juncture, plaintiffs can seek both damages for breach of contract and restitution under the UCL as alternative theories of recovery.

### 3. Recovery of the Policy's Purchase Price

Plaintiffs allege that they "are entitled to restitution of the money they paid in premium to Transamerica during the time they owned the Policy, as well as the purchase price paid for the Policy, which constituted a recoupment of premium that the prior owner had paid to Transamerica." FAC ¶ 65. Transamerica contends that plaintiffs' "UCL claim should also be dismissed to the extent it is premised on recovery of the purchase price paid for the Policy by the original policy owner—because this represents monetary damages not available under the UCL." Mot. at 22. That is because, according to Transamerica, plaintiffs "[h]ave no ownership interest in premiums paid by the prior owner of the Policy, and do not allege they are suing on an assigned claim" and "[s]uch a recovery would constitute non-restitutionary disgorgement which is unavailable under the UCL." <u>Id.</u>

The California Supreme Court clarified, for UCL purposes, the distinction between "restitution" and "disgorgement" in <u>Korea Supply Co.</u> An order for restitution "compel[s] a UCL defendant to return money obtained through an unfair business practice *to those* persons in interest *from whom the property was taken*, that is to persons who had an ownership interest in the property or those claiming through that person." <u>Korea Supply</u>

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-10478-CAS(GJSx) | Date | March 23, 2020 |
| Title | STEVEN DRAEGER ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

<u>Co.</u>, 29 Cal. 4th at 1144–45 (internal citation omitted) (emphases added). "Disgorgement," however, "is a broader remedy than restitution" and "may compel a defendant to surrender *all money obtained* through an unfair business *practice even though not all is to be restored to the persons from whom it was obtained* or those claiming under those persons." <u>Id.</u> at 1145 (emphases added). "[D]isgorgement . . . is not an authorized remedy in an individual action under the UCL." <u>Id.</u> at 1140.

Here, plaintiffs concede that "Transamerica's argument concerning restitution may be correct," but argues that "it does not eliminate the claim." Opp. at 17. The Court agrees and therefore declines to dismiss plaintiffs' UCL claim on this basis. <u>See</u> <u>Armed Forces Bank NA v. Dragoo</u>, No. 17-cv-00786-PHX-ROS, 2018 WL 8621584, at *4 (D. Ariz. Sept. 28, 2018) ("The general rule is that "a Rule 12(b)(6) motion will not be granted merely because a plaintiff requests a remedy to which he or she is not entitled.").

## IV. CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. The Court **DENIES** Transamerica's motion to dismiss plaintiffs' breach of contract claim;

2. The Court **DISMISSES** plaintiffs' claim for tortious breach of the implied covenant of good faith and fair dealing claim **without prejudice**;

3. The Court **DENIES** Transamerica's motion to dismiss plaintiffs' intentional misrepresentation and concealment claim;

4. The Court **DENIES** Transamerica's motion to dismiss plaintiffs' negligent misrepresentation claim;

5. The Court **DENIES** Transamerica's motion to dismiss plaintiffs' UCL claim.

Plaintiffs shall file a second amended complaint within **thirty (30) days**.

IT IS SO ORDERED.

| | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |