UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'     JS-6

| | | | |
|---|---|---|---|
| Case No. | 2:19-CV-10478-CAS-GJSx | Date | July 26, 2021 |
| Title | STEVEN DRAEGER AND DARA DRAEGER v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Present: The Honorable    CHRISTINA A. SNYDER

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:     Attorneys Present for Defendants:

Not Present     Not Present

**Proceedings:** (IN CHAMBERS) - DEFENDANT TRANSAMERICA LIFE INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION (Dkt. 52, filed on December 1, 2020)

## I.    INTRODUCTION

Plaintiffs Steven and Dara Draeger filed this action against defendant Transamerica Life Insurance Company ("Transamerica") on July 19, 2019, challenging Transamerica's Monthly Deduction Rate ("MDR") increases. Dkt. 1.[1] On March 23, 2020, the Court granted in part and denied in part Transamerica's motion to dismiss plaintiffs' first amended complaint. Dkt. 38. Plaintiffs thereafter filed the operative second amended complaint on March 25, 2020. Dkt. 32 ("SAC"). The SAC asserts claims for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) intentional misrepresentation and concealment; (4) negligent misrepresentation; and (5) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"). On May 18, 2020, the Court granted Transamerica's motion to dismiss plaintiffs' claim for breach of the implied covenant of good faith and fair dealing. Dkt. 38 at 10.

On December 1, 2020, Transamerica moved to dismiss plaintiffs' SAC for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule

---

[1] Unless otherwise stated, all references to the docket refer to the docket in this case, No. 2:19-cv-10478-CAS-GJS.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL  'O'  JS-6

| Case No. | 2:19-CV-10478-CAS-GJSx | Date | July 26, 2021 |
|---|---|---|---|
| Title | STEVEN DRAEGER AND DARA DRAEGER v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

12(b)(1)"). Dkt. 52 ("Mot."). Plaintiffs opposed on January 4, 2021, dkt. 58 ("Opp."), and Transamerica replied on January 11, 2021, dkt. 59.

The Court held a hearing on January 25, 2021, in which it requested supplemental briefing on the question of whether plaintiffs' claims had been released pursuant to a previous class action settlement agreement. Transamerica filed a supplemental brief on February 23, 2021. Dkt. 67 ("Def. Supp. Brief"). Plaintiffs responded on March 12, 2021. Dkt. 74 ("Plt. Supp. Brief"); see also dkt. 75, Plaintiffs' Objections to Declarations of Jeffrey Freeze and Jeff Wiley ("Plt. Evid. Objs."). Transamerica filed a reply on March 19, 2021. Dkt. 76 ("Def. Supp. Reply").

Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

The Court previously set out the factual and procedural background of this case in its March 23, 2020 order. Dkt. 29. For that reason, the Court only sets forth those facts necessary to resolve Transamerica's instant motion to dismiss.

In February 2006, plaintiffs purchased a Transamerica flexible premium universal life insurance policy on the secondary market for $430,000. SAC ¶¶ 6, 8; SAC, Exh. 1 ("Policy"). The Policy, number 60102671, insured the life of Clarice M. Lacey, who is not a party to this action; it has a face value of $1,500,000. SAC ¶ 6. While plaintiffs owned the Policy, they paid all monthly deductions to keep the Policy in-force. Id. ¶¶ 10, 40. In July 2016, Transamerica increased the MDR on the Policy by 118%. Id. ¶ 13. Plaintiffs allege that these increases put sufficient economic burden on them that they chose to sell the Policy for $150,000 on July 28, 2017. Id. ¶ 40.

Plaintiffs sold the Policy on the secondary market to a third-party investor, Montage Financial Group ("Montage"), dkt. 53-1, Declaration of Hutson B. Smelley ("Smelley Decl."), Exh. A, Life Settlement Purchase Agreement ("Purchase Agreement"), which in turn transferred ownership of the Policy to its current owner, Koa Capital Group, LLC ("Koa"), on August 10, 2017, Smelley Decl., Exh. B (assignment from Montage to Koa).

The class action, Feller v. Transamerica Life Insurance Company, No. 2:16-cv-01378-CAS-GJSx (C.D. Cal.) ("Feller"), initially brought on February 28, 2016, ultimately challenged Transamerica's MDR increases in 2015 and 2016, including those at issue here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'      JS-6

| Case No. | 2:19-CV-10478-CAS-GJSx | Date | July 26, 2021 |
|---|---|---|---|
| Title | STEVEN DRAEGER AND DARA DRAEGER v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

The plaintiffs in Feller brought claims for, among other things, breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the UCL. Id., dkt. 293 ¶¶ 94–126. On October 4, 2018, the parties to the class action agreed to a nationwide class action settlement and release of claims relating to the 2015 and 2016 MDR increases. Id., dkt. 401-1. Specifically, the Feller Settlement Agreement and Release (the "Feller Settlement," or "Settlement") released:

> [A]ny and all claims, causes of action, debts, liabilities, damages, restitution, equitable, legal and administrative relief, known and unknown, at law or in equity, whether brought directly or indirectly, … arising out of or relating to the MDR Increases or any claims or causes of action that were or could have been alleged in the Second Consolidated Complaint based on the same factual predicate, including but not limited to (a) the decision to implement the MDR Increases, (b) the design, development, and implementation of the MDRs that were the subject of the MDR Increases; and (c) any payments made in the past or future as a result of the MDR Increases[.]

Id., dkt. 401-1 ¶ 92. The Settlement defined "Releasors" as "the Plaintiffs and Settlement Class Members, on behalf of themselves, their heirs, assigns, executors, beneficiaries, beneficiaries designated under Policies, administrators, predecessors, and successors, and any other person or entity purporting to claim on their behalf." Id., dkt. 401-1 ¶ 56.

The Settlement Class was defined to include "[a]ll persons or entities who own or owned a Policy encompassed by the MDR Increases during the Class Period"; Class Period is defined as "August 1, 2015, through and including the date th[e] Final Approval Order is entered," which was February 6, 2019. Id., dkt. 444 at 4, 5. As stated above, plaintiffs owned their Policy during the Class Period, and sold it on July 28, 2017.

As to class notice, the Settlement required, in relevant part, that: "[Transamerica] will send a Class Notice Package by first-class mail to the last known address of each reasonably-identifiable person and entity in the Settlement Class[.]" Id., dkt. 401-1 ¶ 72. Furthermore, the Settlement provided that "Co-Lead Class Counsel may at their own expense supplement the Class Notice through the establishment of a website with more information and links to important documents relating to the Consolidated Actions and the proposed Settlement." Id., dkt. 401-1 ¶ 76. The Court approved this notice plan as "the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:19-CV-10478-CAS-GJSx | Date | July 26, 2021 |
|---|---|---|---|
| Title | STEVEN DRAEGER AND DARA DRAEGER v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

best means practicable, and [] reasonably calculated, to apprise the Settlement Class Members" of the Settlement. Id., dkt. 404 ¶ 7.

Rust Consulting, Inc. ("Claims Administrator"), selected by the parties and approved by the Court, submitted two declarations detailing its compliance with the notification requirements set forth in the Settlement. Id., dkts. 419, 430. The settlement website went live at www.fellersettlement.com on November 12, 2018. Id., dkt. 419 ¶ 6. On November 13, 2018, the Claims Administrator caused the Class Notice Package to be mailed to 71,401 Settlement Class members, who had been identified by Transamerica in a list provided to the Claims Administrator. Id., dkt. 419 ¶ 4. This list of Settlement Class members was derived from Transamerica's records of the most recent owners of the in-force and terminated class policies. Def. Supp. Brief at 4–5. Koa, who was the most recent owner of the Policy during the Class Period, did not opt out of the Settlement. Feller, dkt. 444, Exh. A (showing policy numbers for policies owned by opt-outs, which does not include the Policy at issue). Plaintiffs state that they did not receive actual notice of the Settlement. Dkt. 74-2, Declaration of Steven Draeger ¶ 5; dkt. 74-3, Declaration of Dara Draeger ¶ 5.

On February 6, 2019, the Court approved the Feller Settlement. Feller, dkt. 444. In the Final Order, the Court found that "through the mailing of the Class Notice in the form and manner ordered by this Court the Settlement Class has received the best practicable notice[.]" Id., dkt. 444 at 12. Pursuant to the Final Order, Transamerica provided appropriate settlement relief applicable to the Policy. Dkt. 54, Declaration of Aliza Klau ¶ 2. However, because the Settlement's monetary relief for in-force policies was provided through an increase to each policy's accumulation value, the Settlement did not provide monetary relief for the Settlement Class members like plaintiffs, who had sold their policies. Def. Supp. Brief at 5–6.

Transamerica argues that plaintiffs lack standing to sue on the claims raised in the SAC and released pursuant to the Settlement because they assigned those claims to Montage which, in turn, assigned those claims to Koa. Additionally, because plaintiffs' claims asserted in this action were encompassed by the Feller Settlement, and were released by the Final Order in that case, Transamerica argues that plaintiffs' claims should be dismissed for lack of subject matter jurisdiction.

Plaintiffs respond that "[t]he fact that the Policy's new owner subsequently participated in the Feller class action settlement, including by releasing all claims relating to the 2016 MDR increase does not affect Plaintiffs' standing to assert their accrued claims

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'   JS-6

| Case No. | 2:19-CV-10478-CAS-GJSx | Date | July 26, 2021 |
|---|---|---|---|
| Title | STEVEN DRAEGER AND DARA DRAEGER v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

against [Transamerica]" because by the terms of the assignment, the right to assert those accrued claims was not transferred to Montage. Opp. at 11.

Although Transamerica has filed a motion to dismiss pursuant to Rule 12(b)(1), the parties have subsequently submitted additional briefing and evidence, as discussed above. Furthermore, and more importantly, the question of whether the claims at issue have been released based on matters outside the face of the SAC raises an affirmative defense to the merits of the claims which does not implicate this Court's subject matter jurisdiction. The Court therefore exercises its discretion to convert Transamerica's motion to dismiss into one for summary judgment pursuant to Rule 56. The Court further finds that plaintiffs were fairly appraised that the Court would look beyond the pleadings in ruling on this motion because the Court requested additional briefing on fact questions outside the face of the pleadings, and because both parties submitted additional evidence and referenced that evidence in their supplemental briefing. Mayer v. Wedgewood Neighborhood Coal., 707 F.2d 1020, 1021 (9th Cir. 1983); see Jinkins v. Temecula Towne Ctr. Assocs., LLC, No. EDCV 18-2281 PSG (KKx), 2019 WL 1652086, at *2 (C.D. Cal. Feb. 15, 2019) (notice adequate where non-moving party's briefing referenced evidence outside the pleadings).

### III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'   JS-6

| | | | |
|---|---|---|---|
| Case No. | 2:19-CV-10478-CAS-GJSx | Date | July 26, 2021 |
| Title | STEVEN DRAEGER AND DARA DRAEGER v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

burden of proof at trial." Celotex, 477 U.S. at 322; see Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts … must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV. DISCUSSION

### A. Release of Claims in Feller Settlement

In its tentative order and at the hearing held January 25, 2021, the Court noted that neither plaintiffs, Montage nor Koa opted out of the Feller Settlement. Accordingly, the Court observed that making a determination of who owns the claims asserted in Feller may not be necessary, because it appears that all three parties are bound by the Feller Settlement regardless of who owned the claims at any time during the Class Period. The Court invited oral argument and supplemental briefing regarding this issue.

Neither party disputes that the claims at issue here were subject to the Settlement in Feller. Therefore, assuming, without deciding, that plaintiffs did not assign all of their claims asserted in the SAC to Montage, the only remaining dispute is whether the release was effective to bar their claims because they did not receive individual mailed notice of the Feller Settlement.

Transamerica argues that the class notice in Feller was similar to notice procedures used in other insurance rate class action cases. Def. Supp. Brief at 8. Transamerica also argues that the means used to determine each "reasonably identifiable person and entity in the Settlement Class" were the best practicable methods for providing notice of the Settlement under the circumstances of this case for two reasons. Id. at 8–9. First, Transamerica argues the "reasonably identifiable" class members were the current owners

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:19-CV-10478-CAS-GJSx | Date | July 26, 2021 |
|---|---|---|---|
| Title | STEVEN DRAEGER AND DARA DRAEGER v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

of record of in-force policies and the most recent owners of record of terminated policies, and that the anticipated benefit for undertaking additional effort to identify and notify by mail prior owners would have been minimal because "[t]here was simply no reason for the parties to expect there to be class members who sold their policies but retained rights to sue on the MDR Increases[.]" Id. at 9. Transamerica contends plaintiffs are the only such persons to bring suit against Transamerica. Id. at 10. Second, Transamerica argues that attempting to identify previous policy owners who would allege they retained certain claims arising from the MDR increases would have been unduly burdensome. Id.

In support of its argument that identifying previous policyowners, let alone previous policy owners who sold their policies and who retained claims for wrongful MDR increases, would have been unduly burdensome, Transamerica submitted declarations from several Transamerica employees regarding Transamerica's administrative and data management systems. According to Jeffrey Freeze, Transamerica's Head of Modernization, data from over 60,000 of the policies covered by the Feller Settlement was stored on the CyberLife system.[2] Dkt. 69, Declaration of Jeffrey Freeze ("Freeze Decl.") ¶ 2. This system records only current policy owners, but it also makes an annual backup. Id. According to Freeze, Transamerica could have identified policies which had changes in ownership by comparing these annual backups and identifying policies for which there were owner name changes from one year to another. Id. Transamerica could then have pulled files for each policy identified to confirm that Transamerica processed an ownership change. Id. According to Freeze, this process "would have required substantial manual work and would have taken at least a month to accomplish." Id.

Transamerica also uses the LifePro system to store data on certain policies. According to a Specialist Software Engineer at Transamerica, Jeff Wiley, the LifePro

---

[2] Plaintiffs object to the Freeze Declaration and the Wiley Declaration, described below, on the grounds that they lack foundation, are not based on personal knowledge, and incorporate hearsay. Plt. Evid. Objs. at 2–3. The thrust of plaintiffs' argument is that Freeze and Wiley fail to adequately establish upon what experience or information they base the conclusions set forth in their declarations. However, those declarations adequately set forth the foundation for the statements made about Transamerica's data management systems. Plaintiffs' objections are **OVERRULED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:19-CV-10478-CAS-GJSx | Date | July 26, 2021 |
|---|---|---|---|
| Title | STEVEN DRAEGER AND DARA DRAEGER v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

system held records related to over 6,000 of the policies subject to the Feller Settlement. Dkt. 70, Declaration of Jeff Wiley ("Wiley Decl.") ¶ 2. LifePro contains individual relationship history files for each policy. Id. These include information regarding ownership changes. Id. According to Wiley, identifying policies which had undergone a change in ownership would have required an "individualized review" of the relationship history files, which "would have required substantial manual work and would have taken at least 100 hours to accomplish." Id.

Plaintiffs respond that former policyholders, such as themselves, were reasonably identifiable by Transamerica, and that Transamerica neglected to inform the Court that it did not consider former policyholders, other than the most recent owners of terminated policies, to be reasonably identifiable. Plt. Supp. Brief at 2–3. Plaintiffs argue that Transamerica knew some policies subject to the Feller Settlement likely had prior owners who owned policies during the Class Period because Transamerica knew that the dramatic MDR increases forced some policyholders to surrender or terminate their policies. Id. at 3. And because an assignment does not necessarily convey all accrued causes of action by operation of law, Transamerica should have known that some former policyholders were likely to be class members with viable claims against Transamerica personal to them that were not assigned to the purchasers of their policies. Id. at 13–14.

Plaintiffs further argue that identifying former policyholders would not have been unduly burdensome. For instance, plaintiffs argue that it would not have been unduly burdensome to extract basic information such as past ownership from the CyberLife system's annual backups, or from the LifePro system. Id. at 4. According to a declaration filed by a former insurance executive with experience in systems management, CyberLife and LifePro are commonly used, functional and up-to-date systems. Dkt. 74-5, Declaration of Laura A. Dambier ("Dambier Decl.") ¶¶ 7–8. According to plaintiffs' estimate, running queries of these systems would have cost Transamerica $15,000.[3] Plt. Supp. Brief at 13.

---

[3] Transamerica objects to the admissibility of this estimate on the grounds that it is based on a declaration provided by a former insurance executive, Laura A. Dambier, who has never worked at Transamerica. Def. Supp. Reply at 10–11; see Dambier Decl. Dambier states she has 20 years of experience in the insurance industry, including experience in insurance operations, technology optimization and process integration, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'   JS-6

| Case No. | 2:19-CV-10478-CAS-GJSx | Date | July 26, 2021 |
|---|---|---|---|
| Title | STEVEN DRAEGER AND DARA DRAEGER v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Finally, plaintiffs argue that Transamerica has not explained why it could not identify prior owners "by locating the Transfer of Ownership Forms in its system logs or records, or locating the confirmations of change that those forms say will be mailed to the transferor." Id. at 5. In sum, plaintiffs argue that Transamerica has failed to substantiate its claim that ascertaining the identities of former policyholders, such as plaintiffs, would have been unduly burdensome.

The Supreme Court has made clear that "individual notice to identifiable class members is not a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 176 (1974). Accordingly, "class members in a Rule 23(b)(3) class may be bound to the result of that action only if the notice and opt-out requirements applicable to Rule 23(b)(3) actions are satisfied." Frank v. United Airlines, Inc., 216 F.3d 845, 852 (9th Cir. 2000). But "Rule 23 requires only the 'best notice that is *practicable under the circumstances*, including individual notice to all members who can be identified through *reasonable effort*.'" Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1128–29 (9th Cir. 2017) (quoting Fed. R. Civ. P. 23(c)(2)(B)) (emphasis in original). "[T]he rule does not insist on actual notice to all class members in all cases[.]" Id. at 1129 (quotation and alteration omitted).

The question in this case is whether plaintiffs could have been identified—and thus whether they were owed individual notice—through "reasonable effort." "[R]easonableness is a function of anticipated results, costs, and amount involved. A burdensome search through records that may prove not to contain any of the information sought clearly should not be required. On the other hand, a search, even though calculated to reveal partial information or identification, may be omitted only if its cost will exceed the anticipated benefits." In re Nissan Motor Corp. Antitrust Litig., 552 F.2d 1088, 1099 (5th Cir. 1977); see Hughes v. Kore of Indiana Enter., Inc., 731 F.3d 672, 676 (7th Cir. 2013) (reasonable effort is "effort commensurate with the stakes"). As the Ninth Circuit recently observed, notice is "not inadequate merely because every class member [is] not

---

overseeing administrative functions such as insurers' data management systems. Dambier Decl. ¶¶ 3–4. The objection is **OVERRULED**. However, even if the evidence is considered, it does not have significant probative value because Dambier has provided no estimate of the expense to identify prior owners who retained their accrued claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| | | | |
|---|---|---|---|
| Case No. | 2:19-CV-10478-CAS-GJSx | Date | July 26, 2021 |
| Title | STEVEN DRAEGER AND DARA DRAEGER v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

directly mailed or because counsel [does] not obtain more unnamed class member [contact information]." In re Lithium Ion Batteries Antitrust Litig., No. 19-16803, 2021 WL 1592994, at *2 (9th Cir. Apr. 23, 2021). There is, then, a limit to what efforts are reasonable. See Carlough v. Amchem Prod., Inc., 158 F.R.D. 314, 325 (E.D. Pa. 1993) ("Rule 23 does not require the parties to exhaust every *conceivable* method of identifying the individual class members." (emphasis in original)). "The determination of what efforts to identify and notify are reasonable under the circumstances of the case rests in the discretion of the judge[.]" Lee v. Enter. Leasing Co.-W., No. 3:10-cv-00326-LRH, 2014 WL 4801828, at *2 (D. Nev. Sept. 22, 2014) (quotation omitted); see 3 Newberg on Class Actions § 8:8 (5th ed. 2021).

In order to identify past policyowners, Transamerica would have had to identify those policies which were sold or transferred during the Class Period, and then locate the last known contact information for the previous owners. Furthermore, prior owners who sold or transferred their policies and assigned their claims released by the Settlement would have no remaining rights against Transamerica. Accordingly, to identify prior owners who retained their claims, Transamerica would have had to review individual documentation to determine which previous owners, if any, may have retained their accrued claims to sue for MDR increases. The additional search efforts to identify prior owners who retained their claims would have been even greater than the expense of identifying prior owners alone.

In assessing the adequacy of the means chosen to notify class members of the pendency of a class action or of a proposed settlement, courts consider the expected benefits of undertaking efforts to identify class members, weighed against the costs of doing so. Generally, courts require additional efforts only when those efforts are expected to identify a substantial number of additional class members. See Nissan, 552 F.2d at 1093, 1094 (undertaking examination of 1.7 million retail delivery report cards to identify names and addresses of 371,000 original retail purchasers); Perez v. First Am. Title Ins. Co., No. CV-08-1184-PHX-DGC, 2010 WL 4824082, at *2 (D. Ariz. Nov. 22, 2010) (decertifying class where plaintiffs failed to conduct paper file review which "would have revealed information necessary to identify most class members" at issue). In Feller, it is unlikely that the additional efforts requested by plaintiffs here would have identified a significant number of prior-owner absent class members who allegedly retained their claims, compared with the cost of those efforts. See Sollenbarger v. Mountain States Tel. & Tel. Co., 121 F.R.D. 417, 436 (D.N.M. 1988) (concluding it was unreasonable for plaintiffs to retrieve names of inactive telephone customers from defendant's microfiche records

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'     JS-6

| Case No. | 2:19-CV-10478-CAS-GJSx | Date | July 26, 2021 |
|---|---|---|---|
| Title | STEVEN DRAEGER AND DARA DRAEGER v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

because, in part, the number of class members revealed would be "quite small"). As noted, the list of prior owners compiled by comparing ownership year to year would not have been a list of class members who retained their claims, but rather simply a list of prior owners. See In re Domestic Air Transp. Antitrust Litig., 141 F.R.D. 534, 547 (N.D. Ga. 1992) (concluding additional efforts unreasonable in part because they would produce "a list of credit card numbers and not a list of class members"). Indeed, plaintiffs have failed to come forward with any data which would demonstrate that a substantial percentage of prior owners retained their claims. Because Feller is distinguishable in these ways from cases where courts required significant additional effort to identify class members, the Court concludes that the class notice program in Feller was reasonable under all of the facts and circumstances of this litigation.

    Accordingly, the Court concludes that notice was provided to all class members in Feller identifiable through reasonable effort. See Lithium Ion Batteries, 2021 WL 1592994, at *2 (it is not dispositive that counsel "did not obtain more unnamed class member [contact information]"). Therefore, because the class notice was adequate and complied with Rule 23 and due process, the claims at issue in this case have been released by the Feller Settlement.[4]

## V.    CONCLUSION

    According to the foregoing, the Court **GRANTS** defendant's motion to dismiss plaintiffs' claims.

    IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

---

[4] As noted above, because the Court concludes that the claims at issue here were released in the Feller Settlement, it does not reach the question of whether plaintiffs retained any of these claims.